# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID. Nos. 1812014043 |
| | ) | 1812006782 |
| JOSHUA CIRWITHIAN, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: November 22, 2023
Decided: February 28, 2024

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED, AND POSTCONVICTION COUNSEL'S MOTION TO WITHDRAW BE GRANTED.

Nichole T. Whetham Warner, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State*.

Joshua Cirwithian, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se*.

Elliott Margules, Esquire, Office of Defense Services, Public Defender's Office, Wilmington, Delaware, *Trial Counsel for Defendant*.

Edward Gill, Esquire, Gill, Welch and Chamberlain, PA, Georgetown, Delaware, *Appellate Counsel for Defendant*.

Kimberly Price, Esquire, Collins, Price and Warner, Wilmington, Delaware, *Postconviction Counsel for Defendant*.

**O'CONNOR, M.**, Commissioner.

This 28th day of February, 2024, upon consideration of Defendant's Motion for Postconviction Relief;[1] the State's Response to Defendant's Motion for Postconviction Relief;[2] the Affidavit of Trial Counsel;[3] the Supplemental Affidavit of Trial Counsel;[4] Postconviction Counsel's Motion to Withdraw;[5] Defendant's Response to Counsel's Motion to Withdraw;[6] Defendant's Supplement to Motion for Postconviction Relief;[7] and the record in this matter, the following is my Report and Recommendation.

## PROCEDURAL BACKGROUND

On November 4, 2019, after a four-day bench trial, Joshua Cirwithian (hereinafter "Defendant") was found guilty of three counts of Sexual Solicitation of a Child and one count of Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the First Degree.[8] Defendant's victims were minors at the time of the alleged sexual misconduct -- S.C., a relative, and S.R., the child of a former paramour.

---

[1] Docket Item ("D.I.") 72. References to Docket Items relate to the docket in Superior Court Case No. 1812014043.
[2] D.I. 95.
[3] D.I. 93.
[4] D.I. 104.
[5] D.I. 88.
[6] D.I. 91.
[7] D.I. 94.
[8] D.I. 68, October 29, 2019 Trial Tr. at 6:1-13. Prior to the start of trial, the State dismissed one count of Unlawful Sexual Contact Second Degree.

On December 10, 2019, the State filed a Motion to Declare Defendant a Habitual Offender,[9] which this Court granted prior to sentencing on March 6, 2020.[10] On March 6, 2020, this Court sentenced Defendant to an aggregate term of imprisonment of 70 years, suspended after serving 26 years pursuant to 11 *Del. C.* § 4214(a), followed by probation supervision.[11] The Delaware Supreme Court affirmed Defendant's convictions on direct appeal.[12]

On August 6, 2021, Defendant filed a *pro se* Motion for Postconviction Relief,[13] and a Motion for Appointment of Counsel.[14] Defendant's *pro se* Motion for Postconviction relief raised three claims: (1) trial counsel was ineffective for failing to "file for a suppression hearing on the submission of the victim's Facebook records because they were not properly authenticated [pursuant to] D.R.E. 803(6);"

---

[9] D.I. 59.

[10] D.I. 61, March 26, 2020 Order of the Superior Court.

[11] D.I. 62, Sentence Order.

[12] *Cirwithian v. State*, 2021 WL 1820771 (Del. May 6, 2021). On direct appeal, appellate counsel raised five claims. First, Defendant argued the trial judge assisted and coached S.C. during her testimony in breach of his duty to serve as a neutral arbitrator. *Id.* at *4. Second, Defendant argued the trial judge committed plain error in asking S.C. what she thought Defendant meant in the Facebook messages he sent her, without her having personal knowledge of what he in-fact meant. *Id.* Third, Defendant alleged the State failed to produce sufficient evidence to establish he was in a position of trust concerning S.C.. *Id.* at *5. Fourth, Defendant claimed the trial judge committed plain error by allowing the prosecutor to shift the burden of proof and vouch for S.C.'s credibility during the State's summation. *Id.* Finally, Defendant claimed this Court erred in considering if the Court should have considered a 2003 arrest for rape when fashioning Defendant's sentence, which did not result in a conviction and was nolle prossed by the State. *Id.* at *6. The Delaware Supreme Court concluded, after conducting a review of the record, that Defendant's appeal was wholly without merit. *Id.* On May 24, 2021, the Delaware Supreme Court issued its Mandate, affirming the judgment of the Superior Court. D.I. 71, Mandate of the Delaware Supreme Court.

[13] D.I. 72, *Pro se* Motion for Postconviction Relief.

[14] D.I. 73, Motion for Appointment of Counsel.

(2) trial counsel was ineffective for "not contesting redacted phone calls that the State used to prove [Defendant's] alleged [admitting] of the crime;" and (3) the trial judge abused his discretion by assisting and coaching the complaining witness.[15]

On November 1, 2021, this Court granted Defendant's Motion for Appointment of Postconviction Counsel,[16] and on August 8, 2022, Kimberly Price, Esquire was appointed postconviction counsel.[17]

On February 14, 2023, postconviction counsel filed a Motion to Withdraw as Counsel, a Memorandum in Support of Motion to Withdraw, and an Appendix.[18] In the Memorandum in Support of Motion to Withdraw, postconviction counsel concluded, after conducting a thorough review of the record to determine if any postconviction claims could be ethically advocated, she could not assert any postconviction claims.[19] On March 8, 2023, Defendant filed a Response to Motion to Withdraw as Counsel.[20]

On May 2, 2023, trial counsel filed an Affidavit of Response of Trial Counsel.[21]

On June 8, 2023, Defendant filed a Supplement to the Motion for

---

[15] D.I. 72, *Pro se* Motion for Postconviction Relief at 3.
[16] D.I. 75.
[17] D.I. 78.
[18] D.I. 88, Motion to Withdraw as Counsel and Memorandum in Support of Motion to Withdraw.
[19] *Id.* at 1.
[20] D.I. 91, Defendant's Response to Motion to Withdraw as Counsel.
[21] D.I. 93, Affidavit of Response of Trial Counsel.

Postconviction Relief (the "Supplement"),[22] in which he asserts nine claims. In the Supplement, Defendant argues (1) trial counsel was ineffective for failing to file a motion to exclude the Facebook messages from trial because they were not properly authenticated; (2) trial counsel was ineffective to contest unidentified redacted phone calls admitted by the State at trial; (3) the Superior Court judge abused his discretion by assisting and coaching the complaining witness' testimony; (4) ineffective assistance of counsel for failing to object to the interpretation of Facebook messages as evidence of sexual solicitation; (5) ineffective assistance of counsel for failing to object to uncharged conduct admitted at trial; (6) ineffective assistance of counsel in failing to object to the prosecutor's "improper vouching" for the credibility for the victim; (7) ineffective assistance of counsel in failing to investigate the veracity and authenticity of Facebook messages; (8) cumulative deficiencies in trial counsel's performance resulted in a violation of Defendant's Sixth Amendment rights; and (9) postconviction counsel's motion to withdraw from representation constitutes ineffective assistance of counsel.[23]

On June 13, 2023, the Court received the State's Response to Defendant's Motion for Postconviction Relief.[24] Therein, the State argued Defendant failed to raise any meritorious postconviction relief claims, trial counsel's reasoning and trial

---

[22] D.I. 94, Supplement to Motion for Postconviction Relief.
[23] D.I. 94, Supplement at 3-16.
[24] D.I. 95, State's Response to Defendant's Motion for Postconviction Relief.

4

strategy were sound, and the claims raised in Defendant's Supplement were adjudicated on direct appeal and are therefore procedurally barred pursuant to Superior Court Criminal Rule 61(i)(3) and/or Rule 61(i)(4).[25]

## A. FACTUAL BACKGROUND

The Delaware Supreme Court recited the evidence adduced at trial:[26]

S.C.'s testimony at trial can be summarized as follows. Defendant is her uncle. She has known him all her life. She looked up to him, and at times she confided in him. Defendant inappropriately touched S.C. on or about August 1, 2016 when she was sixteen. Defendant came into her bedroom, asked her about her sex life, made her take off her clothes, and called himself her doctor. Defendant put his hand inside S.C.'s vagina for approximately five minutes and told her that she had a sexually transmitted disease. Defendant then gave S.C. a bag of pills and instructed her to take them before leaving her bedroom. S.C. did not tell anyone after this incident occurred. This incident is the basis for one of the Sexual Solicitation of a Child charges involving S.C. and the charge of Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the First Degree.

---

[25] *Id.*
[26] The facts have been adopted from the Delaware Supreme Court's opinion on direct appeal. *See Cirwithian*, 2021 WL 1820771, at *1-3 (internal citations omitted).

5

Following the above-described incident, but on the same day, Defendant messaged S.C. over Facebook messenger. A number of messages then went back and forth between S.C. and Defendant. Some of these messages were read aloud at trial during S.C.'s testimony. In one message Defendant said "u will be getting a check-up by Dr. Josh every week until it goes away[.]" In another he said that "I need what u got so I can give it to her[,]" referring to an ex-girlfriend who he believed had committed some wrong against him. Defendant also offered to pay S.C. if she would help him. As the prosecutor went through the messages with S.C. during her testimony, the prosecutor frequently asked S.C. what she understood Defendant's messages to mean. S.C. explained that she understood Defendant's messages to mean that he wanted to get her to have sex with him or let him touch her vagina with his hands. Defense counsel did not object. The Facebook messages are the basis for the second Sexual Solicitation of a Child charge involving S.C.

S.C. also testified that she first called the police in the summer of 2017 after a confrontation with Defendant at her house. When she attempted to inform the police officer about Defendant's sexual abuse, the officer told S.C. that she would have to file a police report.

S.C. further testified that she went to the Wilmington Police Station and filed a report in January of 2018 after learning that Defendant had also sexually abused S.R. In March, S.C. was interviewed by Wilmington Police Detective Simonds. In a videotaped statement, played at trial, S.C. described how Defendant touched her in her bedroom during the August 1 incident.

At the time of trial, S.C. was twenty years old. During defense counsel's cross-examination of S.C., she became frustrated by the questions. The judge explained that although "the questions may seem irritating, irrelevant, not to the point[,]" defense counsel's "goal, at this point, is to try what is known as impeach you; hence, to attack your credibility." The judge told S.C. that "as uncomfortable as it may be, he gets to ask those questions, and you are going to have to answer them." S.C. said that defense counsel's questions are "making me very upset, and to the point I am going to leave." The judge responded, "I understand. But you should not do that, and I encourage you not to do that." A few questions later, defense counsel asked S.C. about a time she went to a clinic. The State objected. S.C. began answering before the judge ruled on the objection, but the judge cut her off and said "[t]rust me, you don't want to say too many things because – just

7

wait." S.C. answered the question anyway, "I went to the clinic for a Plan B. Does that help?" After more questions, S.C. asked "[c]an I see you one second? Can I bring something up?" The judge responded, "[w]hen the State comes back up, keep it in your mind; when the State comes back up." Later, S.C. was frustrated by another question. The judge explained that she "just ha[s] to answer the questions. The State will get an opportunity to do what is known as resuscitate you... It actually is worse if you don't answer, and then something comes out that you didn't answer. So just answer truthfully, and the State will get its opportunity." At no time did defense counsel object.

S.R.'s mother testified about the incident involving S.R. Her testimony can be summarized as follows. She had known Defendant since she was eighteen and they used to be in a romantic relationship. After their relationship ended, they remained close friends. She could always depend on Defendant. He was like S.R.'s unofficial father. Defendant had bought diapers and Christmas gifts for S.R. He had also taken S.R. to get her nails done, to soccer games, and to cheerleading. S.R. revealed to her an incident of inappropriate touching by Defendant in January 2018. The incident occurred the previous October. S.R.'s school required that the students wear uniforms. On the day of the

incident, S.R. went to school in her uniform, but at the end of the school day, she changed into a short skirt she had taken to school with her. When she got home, her mother saw the skirt and thought it was unacceptably short. Defendant arrived at the mother's house about that time, and S.R.'s mother asked him to speak to her about the inappropriateness of the short skirt. When S.R. revealed the incident to her mother, S.R. explained that Defendant came into her bedroom to talk about her skirt and told her to undress. After S.R. took her clothes off, Defendant told her to lay on the bed and open her legs because he could tell if she was having sex with someone by looking at her. After hearing this from S.R. in January 2018, S.R.'s mother called S.C.'s mother because she remembered seeing something on Facebook. They spoke with one another and, later that weekend, took S.C. and S.R. to the police station to report the incidents.

S.R.'s testimony can be summarized as follows. She used to look up to Defendant as a father figure and used to call him dad. One day, her mother thought her skirt was too short. Her mother told her to go to her room. She did so and a cousin was in the bedroom with her. Defendant went to S.R.'s bedroom and asked her cousin to leave the room. Defendant then said he could tell if she was having sex and told

9

S.R. to take her clothes off. S.R. took off her shirt and skirt. Defendant then asked S.R. to take her bra and panties off. She refused, so Defendant told her to put her clothes back on and said that "[w]hatever happens in this room, stays in this room." S.R. was 14 years old at that time.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on an ineffective assistance of counsel claim, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[27] There is a strong presumption that counsel's legal representation was competent and falls within the "wide range" of reasonable professional assistance.[28] "The standard for judging counsel's representation is a most deferential one."[29] Trial counsel "observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge."[30] The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most

---

[27] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[28] *Premo v. Moore*, 562 U.S. 115, 122-23 (2011); *see also Flamer v. State*, 585 A.2d 736, 753-44 (Del. 1990) (citations omitted).
[29] *Premo,* 562 U.S. at 122.
[30] *Id.*

common custom.[31] As such, mere allegations will not suffice; instead, a defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal.[32]  Deference must be given to defense counsel's judgment in order to promote stability in the process.[33]

To overcome the strong presumption that trial counsel provided competent representation, the defendant must demonstrate that "counsel failed to act reasonabl[y] considering all the circumstances" and that the alleged unreasonable performance prejudiced the defense.[34]  The essential question is whether counsel made mistakes so crucial that they were not functioning at the level guaranteed by the Sixth Amendment, thereby depriving defendant of a fair trial.[35]

Because a defendant must prove both parts of an ineffectiveness claim, a court may dispose of a claim by first determining that the defendant cannot establish prejudice.[36]  The first consideration in the "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected."[37] "It is not enough to 'show that the errors had some conceivable effect on the outcome of the

---

[31]  *Id.* (citing *Strickland*, 466 U.S. at 690).
[32]  *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[33]  *State v. Fithian,* 2016 WL 3131442 at * 3 (Del. Super. May 25, 2016) (citing *Premo*, 562 U.S. at 120-122).
[34]  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).
[35]  *Id*.
[36]  *Strickland,* 466 U.S. at 697.
[37]  *Frey v. Fulcomer*, 974 F.2d 348, 358 (3rd Cir. 1992).

11

proceeding.'"[38] Defendant must show a reasonable probability of a different result (i.e., acquittal) but for trial counsel's alleged errors.[39]

### 1. Procedural Requirements of Rule 61.

In any motion for postconviction relief, this Court must first determine whether a defendant has satisfied the procedural requirements of Superior Court Criminal Rule 61 before giving consideration to the merits of the underlying claims.[40] Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief unless it is filed within one year after the judgment of conviction is final.[41] Rule 61(i)(2) prohibits the filing of repetitive motions for postconviction relief, unless: under Rule 61(d)(2)(i), the movant "pleads with particularity that new evidence exists that creates a strong inference" of actual innocence; or, under Rule 61(d)(2)(ii),"that a new rule of constitutional law, made retroactive to cases on collateral review," applies to the movant's case.[42]

---

[38] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).
[39] *Strickland*, 466 U.S. at 695.
[40] *Taylor v. State*, 32 A.3d 374, 388 (Del. 2011) (quoting *Shelton v. State,* 744 A.2d 465, 474 (Del. 1999)).
[41] Super. Ct. Crim. R. 61(i)(1). A judgment of conviction is final "when the Supreme Court issues a mandate or order finally determining the case on direct review." *State v. Drake*, 2008 WL 5264880, at *1 (Del. Super. Dec. 15, 2008). Rule 61(i)(1) also affords a Defendant an opportunity to present a motion which "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court." *Id.* Because Defendant has not claimed a newly recognized retroactively applicable right applies to this second postconviction motion, this exception is inapplicable.
[42] Super. Ct. Crim. R. 61(i)(2).

Rule 61(i)(3) provides that "any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows (a) cause for relief from the procedural default and (b) prejudice from the violation of movant's rights."[43]

Rule 61(i)(4) provides that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[44]

Rule 61(i)(5) provides that the procedural bars provided in Rules 61(i)(1)-(4) do not apply to a claim that the Court lacked jurisdiction or if the Defendant satisfies the pleading requirements of Rule 61(d)(2)(i) or (d)(2)(ii).[45]

Defendant's Motion for Postconviction Relief was timely filed on August 6, 2021 and is his first postconviction motion.[46] As such, he has cleared the procedural hurdles established by Superior Court Criminal Rules 61(i)(1) and (2).

However, Defendant's Motion is procedurally defaulted, pursuant to Rule 61(i)(3), as most postconviction claims were not asserted in the proceedings leading to the judgment of conviction. Specifically, Defendant (1) failed to raise a claim

---

[43] Super. Ct. Crim. R. 61(i)(3).
[44] Super. Ct. Crim. R. 61(i)(4).
[45] Super. Ct. Crim. R. 61(i)(5).
[46] D.I. 72. Defendant's *pro se* Motion for Postconviction Relief.

that the victim's Facebook records were not properly authenticated;[47] (2) failed to object or appeal the State's use of redacted phone calls supporting the State's assertion that Defendant committed the crime;[48] (3) failed to object to S.C.'s interpretation of Facebook messages the Defendant sent to S.C.;[49] (4) failed to object to S.C.'s testimony which addressed two incidents of uncharged conduct;[50] (5) failed to object to the prosecutor's improper vouching for the victim's credibility during closing argument;[51] and (6) failing to assert trial counsel failed to investigate the veracity and authenticity of Facebook messages.[52] Defendant has failed to explain why he did not timely raise these claims, either at trial or on direct appeal, and he has not pled specific prejudice from the failure to do so.[53]

Additionally, pursuant to Rule 61(i)(4), Defendant's remaining claims: (1) the trial judge assisted and coached S.C. through her testimony and (2) trial counsel failed to object to the prosecutor's improper vouching for the victim's credibility during closing argument,[54] are procedurally barred as these claims were adjudicated in Defendant's direct appeal.[55]

---

[47] *Id.* at 3.
[48] *Id.*
[49] D.I. 94, Supplement at 4-5.
[50] *Id.* at 6-8.
[51] *Id.* at 8-10.
[52] *Id.* at 6-7. Defendant did not identify or refer to any specific evidence constituting "uncharged conduct" from the trial record.
[53] *See* Super. Ct. Crim. R. 61(i)(3)(A), (B).
[54] *Id.* at 8-9.
[55] *See Cirwithian v. State*, 2021 WL 1820771, at *4-6.

Finally, the Defendant could potentially have avoided the applicability of the procedural bars in Rule 61(i)(1)-(4) if he presented valid claims (1) asserting that the Court lacked jurisdiction or he (2) pled with particularity that (a) new evidence exists that creates a strong inference that Defendant is innocent in fact of the charged offenses, or that (b) a new rule of constitutional law made retroactive on cases on collateral review by the United States Supreme Court or the Delaware Supreme Court applies to his case and makes his conviction invalid.[56] Defendant has not argued the applicability of Rule 61(i)(5) and Rule 61(d)(2) to avoid the procedural bars noted *supra*, and his motion is procedurally barred as Claims I-VII are either procedurally defaulted or previously adjudicated. As a result of Defendant's failure to overcome Rule 61(i)'s procedural bars, I recommend Defendant's claims be summarily dismissed.

## 2. Consideration of the Merits of Defendant's Claims.

Despite the procedural bars to Defendant's Motion, I will briefly address the merits of Defendant's claims. At the end of the day, many of Defendant's claims are overlapping and/or convoluted, and fail to demonstrate prejudice under *Strickland's* exacting standards. As is explained in more detail below, to the extent Defendant asserts counsel provided ineffective representation, this argument is not

---

[56] *See* Super. Ct. Crim. R 61(d)(2).

supported by the record and Defendant has not shown prejudice (i.e., a reasonable probability of a different result), but for counsel's performance.

## Claim I: Ineffective Assistance of Counsel – Facebook Messages.

Defendant argues that trial counsel was ineffective for failing to file a motion to exclude Facebook messages admitted at trial because the messages were not properly authenticated pursuant to Delaware Rule of Evidence ("Rule") 803(6).[57] Defendant's argument in relation to authentication is misplaced.

The concept of authentication as it relates to evidence admitted at trial is controlled by Rule 901. Rule 901 provides "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[58] As Delaware courts have consistently recognized, "'the authentication requirement is fundamental,' but 'it imposes only a lenient burden that is easily met. To satisfy the authentication requirement, the State need only establish a rational basis from which [the factfinder] could conclude that the evidence is connected with the defendant. There are no hard-and-fast rules about how the State must meet the

---

[57] D.I. 72, *Pro se* Motion for Postconviction Relief at 3. Delaware Rule of Evidence ("Rule") 803(6) is commonly known as the business records exception to hearsay and Defendant's reliance on this rule is misplaced.

[58] Rule 901(a).

authentication requirement, and it is permissible to use the content and context of an item [of evidence] for authentication."[59]

Here, S.C. testified about Facebook messages *she sent from her own Facebook account to the Defendant*, and the Defendant's responses to her messages.[60] In testifying that she sent messages from her account, and the Defendant was the person who responded to them, the messages were properly authenticated, and the State established a rational basis from which the judge could conclude the evidence was connected to the Defendant. Counsel's decision not to object was professionally reasonable, and Defendant's claim is meritless.

### Claim II: Ineffective Assistance of Counsel – Failure to contest redacted phone calls the State used to prove Defendant's admission of the crimes.

Defendant generally argues trial counsel failed to contest the admission of redacted phone calls the State admitted in its case in chief. Defendant suggests, without identifying any specific phone call, that if an unredacted version of the call were admitted into evidence, "it would explain more of what [Defendant] was trying to say."[61] Defendant claims trial "counsel failed to play a[] recorded interview by

---

[59] *Bowers v. State*, 2023 WL 6938238, at *3 (Del. Oct. 20, 2023) (internal citations omitted).

[60] Trial counsel denied Defendant's ineffective assistance claim, noting there was no legitimate basis to move to suppress the Facebook messages, as they were "voluntarily obtained by the complaining witness." D.I. 93, Affidavit of Response of Elliott M. Margules Pursuant to Superior Court Criminal Rule 61(g)(2) ("Affidavit").

[61] D.I. 72, Motion for Postconviction Relief at 3.

Det. Simmons with a victim's siblings which the siblings statement would have impeached the victim's testimony."[62]

Defendant's claim fails to identify any phone call, victim, sibling, recording or any other evidence supporting his claim that the recorded interview of a sibling of a victim would have impeached the credibility of a victim's trial testimony.[63]  This Court will not address Rule 61 claims that are conclusory and unsubstantiated,[64] and Defendant has failed to identify any evidence in support of his claim.  Defendant's claim is meritless.

### Claim III: Abuse of Judicial Discretion.

Defendant asserts the Superior Court judge abused his discretion by assisting and coaching the complaining witness' testimony, constituting prejudicial error.  The record does not support Defendant's claim.

On cross-examination, on more than one occasion, S.C. became frustrated with defense counsel's questioning.  As an example, trial counsel asked S.C. if she recalled "how much time passed between when [the Defendant] touched [her] and

---

[62]  *Id.*

[63]  Trial counsel denied Defendant's second claim, noting that there was no basis to object, and in fact he used the content of redacted phone calls admitted as evidence at trial to "impeach the complaining witnesses' testimony."  D.I. 93, Affidavit.

[64]  *State v. Brown*, 2004 WL 745066 (Del. Super. Apr. 8, 2004), citing *Younger v. State*, 580 A.2d 552, 555 (Del. 1990); *State v. Conlow*, Cr.A. No. IN78-09-0985R 1, Herlihy, J. (Del. Super. Oct. 5, 1990);  *State v. Gallo*, Cr.A. No. IN87-03-0589-0594, Gebelein, J. (Del. Super. Sept. 2, 2010).

when [the Defendant] began [a] Facebook conversation?"[65] The following exchange

then occurred between S.C. and Defendant's counsel:

> Witness:  The same day.
> Question:  Was it ten hours, more or less?
> Witness:  How does that help?
> Question: I just need you to answer the questions.  If you don't remember, that's okay, also.
> Witness:  It was within a few hours.
> Question:  Okay.  Do you think it was more than one hour?
> Witness:  I still don't get how this helps.
> Question:  You just have to answer the question whether you understand it or not.  And if you don't remember, that is okay.
> Witness:  Well then, I'll pass.
> Question:  Does that mean you don't remember?
> Witness: No, I don't remember.
> The Court:  One second, one second.  Ma'am, I understand this is really tough, but for the record and for the trial to proceed you are going to have to either answer.  But if you don't recall, that's fine, just say "I don't recall."
> Witness:  Where does that question, how does that – the time period, in between the hours, why does that change anything?
> The Court:  Well, he gets to ask the questions and then your attorney will get – not your attorney, the State will get an opportunity to make it relevant or show that it is not relevant.[66]

The trial transcript reflects the trial judge exercised appropriate control over

the questioning to ensure S.C. responded appropriately to trial counsel's questions.

The trial judge did not coach the witness, and there is no abuse of discretion.  The

---

[65]  D.I. 68, Oct. 29, 2019 Trial tr. at 117:12-14.
[66]  *Id.* at 117:15–118: 21.

19

judge's admonitions to S.C. merely directed her to respond to defense counsel's inquiries.[67]  Defendant's claim is meritless.

### Claim IV:  Ineffective Assistance of Counsel -- failure to object to interpretation of Facebook messages.

In Defendant's Supplement to Motion for Postconviction Relief, he generally argues trial counsel provided ineffective representation when he failed "to object to the interpretation of Facebook messages as evidence of sexual solicitation."[68] Defendant fails, however, to specifically identify any record evidence where the Facebook messages were interpreted by any witness, including S.C.  As a result, Defendant's claim is conclusory and unsubstantiated, and this Court will not entertain unsubstantiated and conclusory claims in postconviction.[69]

Second, and perhaps more importantly, this claim was previously rejected by the Delaware Supreme Court, where during his direct appeal Defendant argued the Superior Court committed plain error by allowing the prosecutor to ask S.C. what she thought Defendant meant in the Facebook messages from him without her having personal knowledge of what [Defendant] meant, in violation of D.R.E.

---

[67]  In fact, during subsequent exchanges between trial counsel and S.C., the Court directed S.C. to answer trial counsel's questions on cross examination (*Id.* at 125:6-17); the Court advised S.C. that she could not ask questions of trial counsel (*Id.* at 129:11 – 130:1;  *Id.* at 131:20 -135:10) and the Court directed S.C. to truthfully  answer defense counsel's questions, and informed S.C. the State would have an opportunity on redirect examination to address her concerns if the State saw the need to do so (*Id.* at 157:22 – 158:18).
[68]  D.I. 94, Supplement at 3.
[69]  See *supra*, fn. 64.

602."[70]  Defendant merely repackages the claim in postconviction, now claiming trial counsel was ineffective for failing to object to the same evidence.  As the Delaware Supreme Court previously held:

> [Defendant] mischaracterizes the prosecutor's questions.  The prosecutor did not ask S.C. what [the Defendant] meant in his messages.  The prosecutor asked S.C. what she understood the messages to mean, or in other words, what S.C. interpreted [Defendant's] messages to mean.  A review of the transcript of S.C.'s testimony leads us to conclude that S.C.'s answers to this line of questioning *add little or nothing to the inferences a trier of fact would readily draw from the contents of the messages themselves, without the assistance of S.C.'s explanations.*[71]

As this Court previously acknowledged in *State v. Swan*, "[r]epackaging and refining does not put life into a dead claim."[72]  Defendant's claim is meritless.

### Claim V: Ineffective Assistance of Counsel – Failure to object to uncharged conduct.

Defendant argues trial counsel was ineffective for failing to object to the uncharged conduct, which he asserts was otherwise inadmissible pursuant to Rule 404(b).[73]  Defendant argues the uncharged conduct admitted at trial "showed a propensity towards committing sexual offenses."[74]  The record does not support Defendant's claim.

---

[70] *Cirwithian*, 2021 WL 1820771, at *4.
[71] *Id.* at *5 (emphasis added).
[72] *State v. Swan,* 2020 WL 7259626, at *38 (Del. Super. Feb. 21, 2020).
[73] D.I. 94, Supplement at 7.
[74] *Id.*

Commonly, a central issue in a trial involving the delayed disclosure of an allegation of sexual assault unsupported by physical or scientific evidence is the credibility of the complaining victim. In some prosecutions involving delayed disclosures of sexual assault, the evidence beyond the purported victim's statements is not generally corroborated by independent evidence, scientific or otherwise. So, a common defense strategy is for counsel to challenge and/or attack the credibility of the victim. And here, defense counsel saw opportunity in admitting S.C.'s claims of uncharged conduct when she was twelve years old to contest her credibility.

In so doing, trial counsel made the strategic decision to "open the door" to the uncharged conduct evidence because he believed it was in Defendant's best interest to do so.[75] Specifically, at the onset of the police investigation and disclosure, the complaining victim S.C. made statements to Corporal Lorne Peterson ("Cpl. Peterson") of the Wilmington Police Department that the Defendant had sexually assaulted her on three occasions when she was twelve years old, and two different occasions prior to that.[76] She claimed she was "raped" – specifically that her "uncle pulled down er pants and fingered her with his finger, as he was – he stated he was checking for diseases."[77] Cpl. Peterson also testified S.C. told him the Defendant

---

[75] D.I. 68, Oct. 29, 2019 Trial Tr. at 23:8-10.
[76] D.I. 67, Oct. 31, 2019 Trial Tr. at 8:10-15.
[77] *Id.* at 9:9-11. The officer later clarified that S.C. told him her uncle pulled down her "underwear." *Id.* at 9:13-17.

fondled her butt, breasts and vagina in July of 2017,[78] and assaulted her a third time in September 2017.[79] These statements exposed significant material differences and arguable inconsistencies between S.C.'s initial report of sexual abuse, her subsequent reports as the investigation progressed, and her trial testimony, constituting potential impeachment evidence to attack S.C.'s credibility. As S.C.'s credibility was central to the issue of Defendant's guilt, trial counsel attacked S.C.'s credibility on cross-examination with her alleged prior statements regarding uncharged and uncorroborated conduct as to Defendant.[80] And, during closing argument, defense counsel argued S.C. was "evasive, and at times, arguably untruthful about her own Facebook," her testimony about the sexual assault events was not reliable,[81] S.C. explicitly denied that (a) the Defendant digitally penetrated her vagina when she was twelve years old, (b) he touched her breasts, and (c) he grabbed her over her clothing.[82] Counsel's decision elicited impeachment testimony about an alleged sexual assault when S.C. was twelve which was inconsistent with S.C.'s sworn trial testimony. In this circumstance, counsel's actions were reasonable

---

[78] *Id.* at 13:15-23.
[79] *Id.* at 14:2-6.
[80] When discussing the fact that the uncharged conduct evidence would likely be elicited at trial prior to the testimony of WPD Corporal Lorne Peterson, who was the lone defense witness, the judge observed "I guess, in terms of any level of prejudice, it would likely be ameliorated in that – it's a bench trial, as opposed to a jury trial, and I am able to compartmentalize, as needed, to address and focus on the issues that are relevant." *Id.* at 24:4-9.
[81] *Id.* at 116:8-13.
[82] *Id.* at 116:17-21.

considering all of the circumstances, and the admission of uncharged conduct was a sound trial strategy to attack S.C.'s credibility.

Finally, as the Court noted when announcing its verdict, "as the trier of fact in a bench trial, the Court is aware that the evidence of other bad acts cannot be interpreted, or could not be interpreted as evidence of general criminal disposition to commit the crime, or crimes, in question."[83] As the Court did not interpret the evidence of uncharged conduct as evidence of general criminal disposition to commit the crimes in question, Defendant cannot establish prejudice from trial counsel's strategic decision to elicit testimony of uncharged conduct.

### Claim VI: Ineffective Assistance of Counsel -- Failure to object to prosecutor's improper vouching for the victim's credibility.

Defendant claims counsel was ineffective for failing to object during closing argument. Specifically, Defendant argues that during closing argument, the prosecutor's rhetorical question "why would S.C. make this story up?" constituted improper vouching for S.C.. The record does not support Defendant's claim.

When there is an allegation of improper vouching by a prosecutor as to the credibility of a witness, it "implie[s] that the prosecutor has superior knowledge that the witness has testified truthfully 'beyond that logically inferred by the

---

[83] D.I. 66, Nov. 4, 2019 Trial Tr. at 7:11-16.

evidence.'"[84]  And to consider whether statements by the prosecutor suggest they hold superior knowledge beyond that logically inferred by the evidence, the context of the prosecutor's statement is an important consideration.

Here, as the prosecutor began her closing argument, she focused her argument on the witnesses, and in particular, S.C..  The prosecutor rhetorically asked: "Why would S.C. make this story up?"[85] She then recited evidence from S.C.'s testimony to explain why S.C. was a credible witness.  Addressing her relationship with the Defendant, she asserted:

> [S.C.] trusted her uncle.  She was close with him.  She confided in him; sought advice from him.  And frankly, she testified that the allegations ripped her family apart.  She was accused of being the devil.  She had nothing, she has nothing to gain out of presenting these allegations to the police.  And if you recall her emotions on the stand, and her demeanor on the stand – upset, crying, angry, visibly angry, her statement to the detective that we watched again, upset – those are reasonable reactions to having to discuss the sexual assault over, and over, and over again.[86]

It is proper for a prosecutor in closing argument to refer to a witness' demeanor and recount their trial testimony, reminding the factfinder of the evidence adduced at trial.  The prosecutor's comments go no further than discuss the evidence and logical inferences therefrom.  The prosecutor's rhetorical comment as to why

---

[84]  *Czech v. State*, 945 A.2d 1088, 1099 (Del. 2008) (citing *Trump v. State*, 753 A.2d 963, 966 (Del. 2000) (quoting *Miller v. State*, 2000 WL 313484, at *4 (Del. Feb. 16, 2000))).
[85]  D.I. 67, Oct. 31, 2019 Trial Tr. at 62:8-9.
[86]  *Id.* at 62:10–63:1.

S.C. did not make this story up to introduce a re-cap of the evidence at trial does not constitute improper vouching and was entirely proper. At no point did the prosecutor imply that she possessed superior personal knowledge of the credibility or veracity of S.C.'s testimony. Defendant's claim is meritless.

### Claim VII: Ineffective Assistance of Counsel -- failure to investigate the veracity and authenticity of Facebook messages.

Defendant argues trial counsel provided deficient representation in failing to "investigate the meta data and other digital footprints associated with the Facebook messages that were central to the case."[87] Defendant argues that if trial counsel had challenged the authenticity of the Facebook messages, there is a reasonable probability that the outcome of the trial would have been different.[88]

Defendant's claim is speculative, conclusory and unsubstantiated. He argues that his Facebook account may have been "hacked" and if any evidence were discovered that the account "had been compromised," it "*could* have substantially altered the interpretation of the messages, and *possibly* led to their exclusion at trial."[89]

Trial counsel denies Defendant's claim, and in response, counsel stated:

> I did investigate the veracity and authenticity of the Facebook messages. As a result of this investigation, I introduced a second

---

[87] D.I. 94, Supplement at 10.
[88] *Id.* at 11.
[89] *Id.*

"Joshua Cirwithian" Facebook profile (A551-52, Defense Exhibit 2), and suggested that the profile linked to the incriminating messages was not the Defendant's. (A479-81, A559-567; A569-71; A632-34; A636-38; A661-62).[90]

At trial, defense counsel argued that the State failed to prove the Facebook records upon which it relied were from Defendant's Facebook account, and even if they were from Defendant's account, the Facebook messages did not constitute sexual solicitation.[91] While the State's reliance on the identity of the author of the Facebook messages was ultimately an issue for the judge to resolve, the record reflects that trial counsel did challenge the authenticity of the Facebook account. Defendant's claim is speculative and meritless.

### Claim VIII: Cumulative Deficiencies in Trial Counsel's Performance Resulted in a Manifest Breach of Defendant's Constitutional Rights.

Defendant argues the "cumulative impact of the identified deficiencies in trial counsel's performance represents a manifest breach of his Sixth Amendment right to effective assistance of counsel."[92] In reliance on *Outten v. State*,[93] Defendant argues counsel's representation evidences a "pattern of deficiencies in counsel's

---

[90] D.I. 104, Supplemental Affidavit of Response of Elliott M. Margoles Pursuant to Superior Court Criminal Rule 61(g)(2). The citations as noted by trial counsel refer to the page citations in D.I. 89 and D.I. 90, Appendix to Memorandum in Support of Motion to Withdraw, Vols. I and II.

[91] D.I. 67, Oct. 31, 2019 Trial Tr. at 137:15-138:1. The State argued in rebuttal closing argument that the prohibited sexual acts required by Count IV of the Indictment were Defendant's Facebook messages requesting sexual intercourse and sexual contact with S.C.. *Id.* at 144:6–145:1.

[92] D.I. 94, Supplement at 12.

[93] 720 A.2d 547 (Del. 1998).

27

performance [which] deprived the Defendant of a fair trial."[94] Defendant's argument is not supported by the record.

To obtain relief under the theory of cumulative error, those errors must derive from multiple errors that caused "actual prejudice."[95] As discussed above, Defendant failed to establish prejudice in the first seven claims, as they are all procedurally barred and otherwise meritless. Therefore, together the claims do not establish prejudice, and Defendant cannot demonstrate cumulative error.

### Claim IX: Ineffective Assistance of Postconviction Counsel – Motion to Withdraw from Representation.

Finally, Defendant argues Postconviction Counsel's Motion to Withdraw from Representation constitutes ineffective assistance of counsel. Defendant's argument is meritless.

Defendant claims postconviction counsel's decision to withdraw "based on a perceived lack of merit" constitutes a "failure to advocate effectively on his behalf."[96] Not so.

As to Claim IX, postconviction counsel is not appointed to blindly advocate a Defendant's meritless contentions. They are to use their professional judgment in independently evaluating *the entire record* for potential postconviction claims,

---

[94] D.I. 94, Supplement at 13.
[95] *Swan v. State*, 248 A.3d 839, 884 (Del. 2021) (quoting *Michaels v. State*, 970 A.2d 223, 231-32 (Del. 2009) (citing *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008))).
[96] D.I. 94, Supplement at 14.

whether those claims were raised by the defendant or by appellate counsel.[97]  And here, appointed postconviction counsel evaluated Defendant's *pro se* postconviction claims and "the entire record in this case in search of meritorious claims for postconviction relief."[98]  At the conclusion of this review, postconviction counsel could not "find any means to collaterally attack the convictions or sentence."[99]  Defendant has failed to identify or argue a meritorious claim in postconviction, and therefore Claim IX is meritless.

## CONCLUSION

Claims I, II, V, VI and VII are procedurally barred because Defendant failed to present the claims during trial, on direct appeal, or in a prior postconviction proceeding.  Claims III and IV are procedurally barred as they were previously raised in the direct appeal and rejected by the Delaware Supreme Court.  And, beyond the procedural bars, all seven claims fail on their merit.  The remaining claims, VIII and IX, are meritless, legally deficient and unsupported by the record.

---

[97]  *See* Superior Court Criminal Rule 61(e)(7).
[98]  D.I. 88, Motion to Withdraw as Counsel and Memorandum in Support of Motion to Withdraw at 17.
[99]  *Id.* at 18.

For all of the aforestated reasons, I recommend Defendant's *pro se* Motion for Postconviction Relief should be **SUMMARILY DISMISSED**.

Postconviction counsel's Motion to Withdraw should be **GRANTED.**

**IT IS SO RECOMMENDED.**

/s/ Martin B. O'Connor
Commissioner Martin B. O'Connor

oc:    Prothonotary